UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | No. 25-mj-00171 |
| | : | |
| v. | : | |
| | : | |
| **KURONO SCUTCHINGS,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its oral motion that the defendant, Kurono Scutchings (hereinafter referred to as "defendant" or "SCUTCHINGS"), be detained pending trial pursuant 18 U.S.C. § 3142(f)(1)(E) (firearm/other dangerous weapon), and 18 U.S.C. § 3142(f)(2)(A) (serious risk of flight), as the defendant, SCUTCHINGS, is charged by Complaint with violating 18 U.S.C. § 922(g)(1) (Unlawful Possession of a Firearm) and Using, Carrying and Possessing a Firearm During a Drug Trafficking Offense, in violation of 18 U.S.C. § 924(c)(1). The evidence presented to the Court shows that the defendant poses a demonstrated danger to the public and is a flight risk if he is released. As described below, all four statutory factors in § 3142(g) strongly favor pretrial detention. In addition, as outlined in the defendant's Pretrial Services Agency (PSA) report, the defendant has three (3) criminal convictions, fifteen (15) prior arrests, and five (5) bench warrants and numerous previous release violations.

Significantly, since on or about 2016-2019 there have been five bench warrants issued against SCUTCHINGS - four executed. SCUTCHINGS prior convictions include Robbery (2020) and Assault Second Degree (2018), violations of good behavior, and failures to appear. Mr. SCUTCHINGS has failed to satisfactorily complete probation or supervision conditions several

times when given the chance. His behavior has only escalated, and he is incapable of abiding by court orders. Therefore, he is a danger to the community and a flight risk. There are no conditions or combination of conditions that will reasonably assure the defendant's safety to the community or appearance. *See* PSR ECF# 4 at 1–5.

Importantly, the government requests that the following points and authorities, as well as any other facts, arguments and authorities presented at the detention hearing, be considered in the Court's determination regarding pre-trial detention.

## I.      Factual and Procedural History

On Sunday, August 24, 2025, at approximately 12:11 a.m., Officers from the MPD Special Missions Unit (SMU) along with federal agents were on patrol in the 7th District operating under the Federal Law Enforcement Surge Task Force. Officers and federal partners were on patrol in this area as officers have had numerous firearm and narcotics seizures from the 2900 block of Knox Place, SE, Washington, D.C.

As officers drove up to the intersection of Hartford Street and Knox Place, they observed individuals outside in the 2900 block of Knox Place, SE. When officers turned to go down the street, they observed Kurono SCUTCHINGS, speaking to another person. Officers observed SCUTCHINGS stop talking to the other person and immediately move straight to the driver side of a vehicle. SCUTCHINGS continued to look in the officers' direction as they drove up to the parked vehicle. At that time, SCUTCHINGS got into driver's side of the vehicle as officers began to exit their vehicle. Through the officers' training and experience, it is typical for individuals to try and flee the area of an open-air drug market like the 2900 block of Knox Place, SE at the sight of officers when they are in possession of illegal contraband.

Officers walked up to SCUTCHINGS, who was now sitting in the driver seat of the vehicle

for further investigation. Officers tapped on the window of the vehicle SCUTCHINGS was in and noticed that SCUTCHINGS had a small clear plastic bag in his right hand. Officers asked SCUTCHINGS what was in the small clear plastic bag, and SCUTCHINGS responded that it was just weed; however, SCUTCHINGS would not show officers the content of what was in the clear bag. At that time, officers directed SCUTCHINGS to get out of the vehicle, and SCUTCHINGS handed them the clear bag. The bag contained a white rock like substance of suspected cocaine base. SCUTCHINGS was then placed under arrest for the possession of a controlled substance. *See* Figure 1 below.



***Figure 1 showing a white rock like substance of suspected cocaine base***

While officers were conducting a search incident to arrest of SCUTCHINGS, from SCUTCHING's compression shorts in his groin area, officers recovered an FN, Five-Seven, semi-automatic firearm, S/N: 386176221, and 20 rounds of 5.7x28mm ammunition (19 in the magazine; 1 in the chamber), with a 20-round capacity magazine. 5.7x28mm ammunition is known to pierce level IIIA body armor, which is standard issue for most law enforcement officers. *See* Figure 2 below.



*See Figure 2 showing recovered firearm*

The firearm appeared to be fully functional, able to be fired with one hand, had a barrel of less than twelve inches, and could fire a projectile by means of an explosive. It should also be noted that there are no firearms or ammunition manufacturers in the District of Columbia and therefore, the firearm and ammunition in this case would have traveled in interstate commerce. While at the station, officers ran the serial number of the firearm and determined that it had been stolen from Prince George's County, Maryland.

In addition, officers recovered a clear bag containing blue vials with a white powdery substance inside and a clear bag of green caps with a white powdery substance inside from the center console of the vehicle next to the driver's seat. Based on law enforcement's training and

experience in narcotics, they are aware that individually packed vials and caps are more indicative of an individual attempting to sell an illegal narcotic as opposed to having it for personal use. The blue vials (weighing approximately 16 grams) field tested positive for fentanyl, the green caps (weighing approximately 7 grams) field tested positive for fentanyl, and the clear bag with white rock substance (weighing approximately 13 grams) field tested positive for crack cocaine. The fact that three different types of narcotics were possessed in distribution quantities close to a firearm also indicates that the firearm was possessed in furtherance of SCUTCHINGS' drug trafficking. *See* Figure 3 below.



*Figure 3 showing the three bags of suspected narcotics*

A law enforcement query confirmed that the firearm was not registered in the District and that SCUTCHINGS did not have a concealed carry permit. A review of SCUTCHINGS' criminal history revealed that SCUTCHINGS was convicted of Robbery in 2020 in the Superior Court of the District of Columbia and was sentenced to 30 months' incarceration. Therefore, at the time SCUTCHINGS possessed the firearm and ammunition, he had been convicted of a crime

punishable by imprisonment for a term exceeding one year and had knowledge of that fact.

There are no firearms or ammunition manufactured within the District of Columbia and therefore the recovered firearm and ammunition traveled in and affected interstate commerce.

## II.     Legal Authority and Argument

As a preliminary matter, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). Specifically, the presentation of hearsay evidence is permitted, and the government may proceed by proffer. *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986); *see also United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should not be used as a discovery device and cross-examination should be limited to the disputed issues, since the detention hearing is not to be turned into a mini-trial and is not to be used as a subterfuge to obtain discovery. *See Smith*, 79 F.3d at 1210; *Williams*, 798 F. Supp. at 36.

By reason of the defendant been charged with Using, Carrying and Possessing a Firearm During a Drug Trafficking Offense, in violation of 18 U.S.C. § 924(c)(1), which is drug trafficking offenses under federal law, there is a presumption in the Bail Reform Act that the defendant should be detained pending trial as a danger to the community. 18 U.S.C. 3142(e). This presumption is reinforced strongly by the facts of the case, as outlined *supra* and below.

Once a rebuttable presumption has been triggered, "the presumption operate[s] at *a minimum* to impose a burden of production on the defendant to offer some credible evidence contrary to the statutory presumption" *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir.

1985) (emphasis in original); *see also United States v. Portes*, 786 F.2d 758, 764 (7th Cir. 1985) (the presumption in § 3142(e) "are 'rebutted' when the defendant meets a burden of production by coming forward with some evidence that he will not flee or endanger the community if released") (quoting *United States v. Dominguez*, 783 F. 2d 702, 707 (7th Cir. 1986)); *United States v. Rodriguez*, 950 F. 2d 85, 88 (2d Cir. 1991) ("[A] defendant must introduce some evidence contrary to the presumed fact in order to rebut the presumption."), citing *United States v. Matir*, 782 F.2d 1141, 1144 (2d Cir. 1986). While the burden of production may not be heavy, *see Unites States v. Stricklin*, 932 F.2d 1353, 1355 (10th Cir. 1991), the applicable cases all speak in terms of a defendant's obligation to introduce "evidence." Moreover, even if the defense does submit such evidence, the presumption remains as a factor that may be considered by the Court, among others, in determining whether the defendant should be detained, and the presumption retains "evidentiary weight." *United States v. Dillon*, 938 F.2d 1412, 1416 (1st Cir. 1991) ("When a defendant produces such evidence, however, the presumption does not disappear. The burden of persuasion remains on the government and the rebutted presumption retains evidentiary weight") (citations omitted).

As the court explained in *United States v. Ali*, 793 F. Supp. 2d 386 (D.D.C. 2011), even if the defendant offers evidence to counter the presumption, the presumption does not disappear entirely:

> At oral argument, defendant's counsel posited that the rebuttable presumption function as a "bursting bubble" that ceases to exist once a defendant produces any credible evidence. Although the D.C. Circuit has not expressly ruled on this issue, circuits that have considered the issue require using the presumption as a factor even after the defendant has produced credible evidence as do judges of this Court.

*Id*. at 388 n.2 (internal citations omitted), citing *United States v. Bess*, 678 F. Supp. 929, 934

(D.D.C. 1988) ("[The presumption] is incorporated into the § 3142(g) factors considered by the court when determining whether conditions of release can be fashioned or whether the defendant must be detained pretrial."); *see also United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010) ("Even when a defendant satisfies his burden of production, however, 'the presumption favoring detention does not disappear entirely but remains a factor to be considered among those weighed by the district court.'") (quoting *United States v. Mercedes*, 254 F. 3d 433, 436 (2d Cir. 2001)); *Portes*, 786 F. 2d at 764 ("[Use] of [the word rebutted] in this context is somewhat misleading because the rebutted presumption in not erased. Instead, it remains in the case as an evidentiary finding militating against release, to be weighted along with other evidence relevant to factors listed in §3142(g)."), quoting *Dominguez,* 783 F. 2d at 707. Clearly, the defendant has not and cannot overcome this presumption for detention.

Specifically, "[i]n determining whether the release of a defendant would endanger the community, the court must consider any available information concerning the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug; the weight of evidence against the person; various personal information including character, employment, past conduct, and so on; and the nature and seriousness of the danger to any person or the community that would be posed by the person's release." *United States v. Smith*, 79 F.3d 1208, 1209 (D.C. Cir. 1996).

### III.     The Bail Reform Act Factors All Favor Detention

The United States seeks detention pursuant to 18 U.S.C. § 3142(f)(1)(E) (firearm/other dangerous weapon), and 18 U.S.C. § 3142(f)(2)(A) (serious risk of flight). *See* PSR ECF# 4 at 1.

The Bail Reform Act, under 18 U.S.C. § 3142(g), enumerates four factors that the Court should analyze in determining whether to detain the defendant pending trial: (1) the nature and

circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release.

The weight of the evidence should be considered equally with the other § 3142 factors. For example, in *United States v. Blackson*, Judge Howell found that "the weight of the evidence should not automatically be weighed less than the remaining statutory pretrial detention factors." No. 23-CR-25 (BAH), 2023 WL 1778194, at *8 (D.D.C. Feb. 6, 2023). Instead, "the weight of the evidence against [a] defendant [should] be weighed as all factors are—in accordance with the specific facts of this case—to determine whether pretrial detention is appropriate." *Id.* at *10; *aff'd,* No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023); *see also, United States v. Zhe Zhang*, 55 F.4th 141, 149-150 (2d Cir. 2022). This Court should follow *Blackson* and *Zhang*; in evaluating the four factors.

Each of these factors weighs in favor of pretrial detention in this case. *See* 18 U.S.C. § 3142(g). A review and understanding of the facts and circumstances in this case should lead the Court to conclude that there are no conditions or combination of conditions that would assure the safety of the community. *See* § 3142(e)(1).

### A. The Nature and Circumstances of this Offense Merits Detention.

The first factor to be considered is the nature and circumstances of the offense charged. This factor weighs in favor of detention. The defendant is charged with Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1) and Using, Carrying and Possessing a Firearm During a Drug Trafficking Offense, in violation of 18 U.S.C. § 924(c)(1). *See, e.g., United States v. Gassaway*, No. 21-CR-550 (RCL), 2021 WL 4206616, at *3 (D.D.C.

Sept. 16, 2021) (collecting cases in this district holding that unlawful firearm possession is dangerous to the public); *United States v. Howard*, No. 20-MJ-181 (BAH), 2020 WL 5642288, at *2–3 (D.D.C. Sept. 21, 2020) (making same observation); *United States v. Cole*, 459 F. Supp. 3d 116, 120 (D.D.C. 2020) (noting that a loaded firearm "has the great potential to escalate into violence").

The defendant possessed the stolen loaded firearm in this case while also possessing a large amounts of various narcotics in his possession at the time of his arrest. More broadly, Judges of this Court have warned against discounting the inherent danger associated with loaded firearms. *See, e.g.*, *Blackson*, 2023 WL 1778194, at *7–8 (asserting that the absence of evidence of "use" "does little to detract from" the danger posed by a firearm, including when it is "at the ready, on his person, and easily within reach"), *aff'd,* No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023).  Here, the defendant had direct access to a loaded stolen firearm and various large amounts of narcotics all demonstrates his total disregard for our community. His blatant criminal violations as outlined in this case are a danger to the community which cannot be resolved through conditions, or a combination of conditions, set by this Court.

The possession of loaded firearms and narcotics by convicted felons are extremely dangerous. The increase of urban shootings and violent crimes involving firearms and narcotics have shown the negative impact that the unregulated flow of firearms can have on a community. Thus, as a threshold matter, the defendant's possession of a loaded handgun and narcotics placed the community at risk. *See e.g.*, *United States v. Gassaway*, No. 21-CR-550 (RCL), 2021 WL 4206616, at *3 (D.D.C. Sept. 16, 2021) (collecting cases in this district holding that unlawful firearm possession is dangerous to the public): *United States v. Howard*, No. 20-MJ-181 (BAH), 2020 WL 5642288, at *2-3 (D.D.C. Sept. 21, 2020) (making the same observation);

*United States v. Cole*, 459 F. Supp. 3d 116, 120 (D.D.C. 2020) (noting that a firearm "has the great potential to escalate into violence"). S*ee also United State v. Kent*, 496 F. Supp. 3d 500, 502 (D.D.C. 2020) (holding that a defendant should be detained pretrial in part because "the firearm recovered from the defendant's person had a round already chambered, making the circumstances even more troubling"), aff'd (D.D.C. Nov. 5, 2020). The firearm recovered from had many of these troubling characteristics, and more broadly, the firearm was loaded and ready to fire when it was recovered. Simply stated, unlawful gun possession and narcotics are so problematic because the number of gun and drug violent crimes committed in the District of Columbia.

Furthermore, the defendant could not have possessed the firearm legally due to his status as a felon and his possession of a large amounts of narcotics and therefore he had an illicit source for the stolen firearm and illegal narcotics, further demonstrating the potential dangerousness associated with the weapon and narcotics and the defendant's prior significant convictions. Thus, the first factor weighs in favor of detention.

### B. The Weight of the Evidence Against the Defendant is Strong.

The second factor to be considered, the weight of the evidence, also clearly weighs in favor of detention. The evidence against the defendant is very strong. As outlined above, the defendant criminal actions and offenses were captured on audio and videotaped recording. Thus, there is no question as to the defendant's identity nor his criminal actions as outlined above.

The weight of the evidence should be considered equally with the other § 3142 factors. Notably, in *Blackson*, following a thorough review of the text of § 3142 and decisions analyzing this factor, Judge Howell found that "the weight of the evidence should not automatically be weighed less than the remaining statutory pretrial detention factors." 2023 WL 1778194, at *8. Instead, "the weight of the evidence against [a] defendant [should] be weighed as all factors are—

in accordance with the specific facts of this case—to determine whether pretrial detention is appropriate." *Id.* at *10. In an unpublished opinion, the D.C. Circuit affirmed Judge Howell's decision. *United States v. Blackson*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023). The Second Circuit reached the same decision after a thorough and careful analysis of the issue. *United States v. Zhe Zhang*, 55 F.4th 141, 149-150 (2d Cir. 2022). This Court should follow *Blackson* and *Zhang;* this factor should be given no less weight than any other factor.

Indeed, "if the evidence against a defendant is overwhelming, credible, helpful, and important to the government's case in chief, that may increase the risk that defendant will flee to avoid future court proceedings and may indicate that the defendant is a present danger to himself or the community if the government's allegations later prove to be true." *Blackson*, 2023 WL 1778194, at *10. This is such a case, and the defendant should be detained pretrial.

### C. The Defendant's History and Characteristics Merit Detention.

The third factor, the history and characteristics of the person, also weighs in favor of detention. Notably, the defendant has several adult felony convictions on his record - prior convictions include Robbery (2020) and Assault Second Degree (2018), violations of good behavior, and failures to appear. Mr. SCUTCHINGS has failed to satisfactorily complete probation or supervision conditions multiple times when given the chance. Simply stated, there are no conditions or combination of conditions which would ensure the safety of our community.

The defendant violated previous release conditions in his prior convictions listed above. He also failed to appear and violated good behavior orders multiple times. It is indisputable that the defendant is unable to follow any conditions set by the court and will not do so in this instant case.

In addition to the defendant routinely and repeatedly violating court orders, he is also a flight risk. This is evidenced by the five bench warrants issued since 2016, four of which were executed. *See* PSR ECF#4 at 2.

The Court should have no faith that he will follow any of the Court's orders or not abscond from justice if released prior to trial. This combination of convictions and utter distain for the court in his failure to comply with even the simplest of instructions makes the defendant's history and characteristics weigh heavily in favor of pretrial detention.

### D.  The Defendant Presents a Danger to the Community.

The fourth factor, the nature and seriousness of the danger to any person or the community posed by the defendant's release, similarly weighs heavily in favor of detention. The D.C. Circuit has noted that "'[w]hen the Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community,'" pretrial detention is available to "'disable the arrestee from executing that threat.'" *United States v. Munchel*, 991 F.3d 1273, 1280 (D.C. Cir. 2021) (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)). This requires the court to make a "forward looking determination" about the defendant's risk of danger to the community, keeping in mind that detention may be justified even if the court does not explicitly find that the defendant is a risk of committing acts of violence. *United States v. Hale-Cusanelli*, 3 F.4th 449, 456 (D.C. Cir. 2021) (citing *Munchel*, 991 F.3d at 1283).

Here, the fourth factor, the nature and seriousness of the danger to any person or the community posed by the defendant's release, also weighs in favor of detention, for the reasons outlined above. Fundamentally, the defendant has demonstrated in the instant offense that he remains a risk to the community.

The defendant is, additionally, a threat to the community as evidenced by his recidivism and his failure to obey court orders. The defendant displayed an inability to follow any court orders in the past which is an identifiable and articulable threat to the community and a risk of flight. The defendant remains a threat to the community and, therefore, this factor weighs in favor of detention.

Moreover, the Court may "consider prior arrests or charges brought against the defendant, even when those actions did not result in convictions." *United States v. Taylor*, 289 F. Supp 3d 55, 70 (D.D.C. 2018). In addition to his convictions, the defendant has other charges that were no papered and/or dismissed for want of prosecution.

Significantly, the defendant's possession of this loaded stolen firearm and narcotics alone present a significant danger to our community. See *United States v. Washington*, 907 F. Supp. 476, 486 (D.D.C. 1995) ("[P]ossession by a felon of a fully loaded semi-automatic pistol suggests that the defendant presents an extreme safety risk to the public."). Finally, the defendant's previous encounters with the criminal justice system and previous firearm related conviction did nothing to deter him from possessing a loaded firearm and narcotics deter him from possessing a loaded firearm and narcotics in this case. Given the defendant's demonstrated noncompliance with the laws governing possession of firearm and narcotics possession, the defendant presents an ongoing danger. Here, because no condition or combination of conditions of release are adequate to protect the community from this defendant or the defendant's return to Court if released, this Court should detain him pending trial.

## Conclusion

The government respectfully requests that the Court detain the defendant pending trial.

Respectfully submitted,
JEANINE FERRIS PIRRO
United States Attorney
*/s/ Emory V. Cole*
EMORY V. COLE
PA Bar No. 49136
Assistant United States Attorney
United States Attorney's Office
601 D Street, N.W.
Washington, D.C. 20530
Telephone: 202-252-7692
Email: emory.cole@usdoj.gov